The CITY OF KANSAS CITY, MISSOURI, Plaintiff,

v.

UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, et al., Defendants.

Civ. A. No. 86–3513.

United States District Court, District of Columbia.

Aug. 6, 1987.

Irving Margulies, Otto J. Hetzel and Kenneth B. Reisenfeld, Weiner, McCaffrey, Brodsky & Kaplan, Washington, D.C., for plaintiff.

Nathan Dodell, Asst. U.S. Atty., Washington, D.C., for defendants.

## MEMORANDUM

SPORKIN, District Judge.

This is a case concerning the Community Development Block Grant ("CDBG") funds paid by the United States Department of Housing and Urban Development ("HUD" or "the Department") to Kansas City pursuant to the Housing and Community Development Act of 1974, codified at 42 U.S.C. § 5301, *et seq., as amended.* Plaintiff has received funds from that program since 1975. During a portion of that time period, there have been two specific disputes about Kansas City's compliance with certain requirements for receipt of CDBG funds.[1] The defendant, not being satisfied with various actions of the plaintiffs in the program and not being able to resolve these disputes informally, simply took the matter into its own hands and conditioned

Kansas City's receipt of 1987 CDBG monies on Kansas City's compliance with HUD's wishes in the underlying disputes.[2] The case is before me on plaintiff's motion for summary judgment which presents the single issue of whether the plaintiff, in these circumstances, was entitled to a formal hearing at the agency level before HUD could condition its receipt of 1987 CDBG monies.

■ Although the issue can be simply articulated, it grows out of a complex statutory framework. Specifically, in the CDBG statute, there are two provisions which provide the Secretary with certain authority to regulate the dispersing of CDBG grants. One of those sections, Section 104(d), codified at 42 U.S.C. § 5304(d), gives the Secretary authority to adjust a recipient's grant after an audit but without any formal hearing.[3] The defendants contend this section gives the Secretary the authority to condition Kansas City's grant in this case without the Secretary having to give Kansas City a formal hearing. Kansas City, for its part, points to a second

---

1. One dispute concerns whether homeowners whose properties abut sidewalks, streets, and gutters which were repaired with CDBG funds can be assessed by Kansas City for a portion of these improvements. The Department originally allowed such assessment, but it changed its policy in 1978, catching Kansas City in the middle of an assessment program. Since 1983 the parties have disagreed about whether Kansas City could continue, after 1978, to assess abutting homeowners for improvements made with pre–1978 CDBG funds.

The second dispute concerns whether Kansas City must report as CDBG program income "loan repayments made to revolving loan funds established and operated by independent, non-profit organizations which had received CDBG funds from the City to help establish the revolving loan funds." Pl. Reply to Def. Opposition to Pl. Motion for Summary Judgment ("Pl.Br.") at 8. Kansas City has taken the position that these loan repayments to independent non-profit entities should not be considered program income and thus the city has refused to list these amounts on its Grantee Performance Reports ("GPRs").

2. HUD withheld $500,000 of CDBG money "until the City demonstrates to the satisfaction of HUD that the assessments levied on ... public improvements [for the construction of side-

walks] are rescinded and any amounts received in payment of the assessments are refunded." Letter from Gerald Simpson, HUD Regional Administrator, to Hon. Richard Berkley, Mayor of Kansas City, Pl. Br., Ex. A at 1. HUD conditioned $3.2 million, or thereabouts, on Kansas City filing revised GPRs to reflect CDBG program income generated by the revolving funds of the non-profit subrecipients. Subsequent to the commencement of this lawsuit, Kansas City filed the revised GPRs and received the $3.2 million. It did so, however, only upon the agreement that it did not thereby relinquish its legal position on the issue. Thus, although only $500,000 technically remains conditioned at this point in time, Kansas City still contends that both the assessment and the subrecipient loan fund issues are in dispute.

3. The pertinent portion of Section 104(d) reads, "The Secretary shall, at least on an annual basis, make such reviews and audits as may be necessary or appropriate to determine—(1) ... whether the grantee has carried out its activities ... in accordance with the requirements and the primary objectives of this chapter and with other applicable laws ..." 42 U.S.C. § 5304(d). The Section then continues, "The Secretary may make appropriate adjustments in the amount of the annual grants in accordance with the Secretary's findings under this subsection." *Id.*

section in the statute, Section 111, codified at 42 U.S.C. § 5311, which requires that when the Secretary finds that a recipient has "failed to comply substantially" with the statute, he can terminate, reduce, or limit the availability of CDBG funds, but only "after a reasonable notice and opportunity for hearing." 42 U.S.C. § 5311.[4]

I find that, in the circumstances presented by this case, the plaintiff is entitled to the process guaranteed by Section 111. This is so because, when viewed within the framework of the entire statutory structure, it becomes apparent that Section 111 and not Section 104(d) applies to the facts at issue here.

## I.

First, as to Section 104(d): Section 104(d) is a subsection of Section 104 and the powers granted to the Secretary in Section 104(d) must be read in the context of the entire section. That section, 42 U.S.C. § 5304, is designed to define the application procedures for grants and it sets forth the procedures a city must comply with to be entitled to monies.

For instance, Section 104(a) requires cities to submit to HUD a "statement of community development objectives and projected use of funds," 42 U.S.C. § 5304(a)(1). The following subsection requires that the grantee's plans be examined by the public and that public hearings be held "to obtain the views of citizens on community development and housing needs." 42 U.S.C. § 5304(a)(2)(C). The Secretary then must certify that the applicant has complied with the application criteria, 42 U.S.C. § 5304(b), and in certain instances, with special application criteria. 42 U.S.C. § 5304(c).

Finally, the subsection at issue here, Section 104(d), requires the grantee to submit to the Secretary, "a performance and evaluation report concerning the use of funds made available ... together with an assessment by the grantee of the relationship of such use to the objectives identified in the grantee's statement under subsection (a) of this section ..." 42 U.S.C. § 5304(d). The grantee's report "shall indicate its programmatic accomplishments, the nature of and reasons for changes in the grantee's program objectives, indications of how the grantee would change its programs as a result of its experiences, and an evaluation of the extent to which its funds were used for activities that benefitted low- and moderate-income persons." *Id.* The Secretary then must audit these reports submitted by

---

**4.** Section 111 reads:

    If the Secretary finds after reasonable notice and opportunity for hearing that a recipient of assistance under this chapter has failed to comply substantially with any provision of this chapter, the Secretary, until he is satisfied that there is no longer any such failure to comply, shall—

    (1) terminate payments to the recipient under this chapter, or

    (2) reduce payments to the recipient under this chapter by an amount equal to the amount of such payments which were not expended in accordance with this chapter, or

    (3) limit the availability of payments under this chapter to programs, projects, or activities not affected by such failure to comply.

42 U.S.C. § 5311(a). Section 111 is implemented by regulations which are published at 24 C.F.R. § 570.913. The regulations require a hearing before the imposition of "any sanction under the Act," and thus appear more strict than the statute itself. *See* 24 C.F.R. § 570.913(c)(1).

    Appeal from a final decision under Section 111 is to a United States Court of Appeals. 42 U.S.C. § 5311(c)(1). Because appeal of a Section 111 determination is to an appellate court,

defendants' contest the jurisdiction of this Court to decide whether Section 111 applies in this case. Fed. Def. Memorandum in Opposition to Pl. Motion for Summary Judgment at 12, fn. 7, *citing Telecommunications Research & Action v. FCC ("TRAC")*, 750 F.2d 70, 72 (1984)("where a statute commits final agency action to review by the Court of Appeals, the appellate court has exclusive jurisdiction to hear suits seeking relief that might affect its future statutory power of review"). However, in this case, defendants concede that Kansas City is faced with a final agency decision under Section 104(d), which is appealable to this Court. Thus, jurisdiction is properly founded here as review of the Section 104(d) determination. As part of that review in this case, it is *necessary* for me to determine whether Section 104(d) or Section 111 properly applies to the underlying dispute. In making this determination, I am not reviewing any agency action under a statutory provision providing exclusive judicial review in the court of appeals (Section 111), since all of the parties agree that no Section 111 procedure has taken place. Thus my review in this case is not proscribed by the holding of the *TRAC* case.

grantees to determine "whether the grantee has carried out [its] activities and its certifications in accordance with the requirements and the primary objectives of this chapter and with other applicable laws, and whether the grantee has a continuing capacity to carry out those activities in a timely manner." 42 U.S.C. § 5304(d)(1).

Thus Section 104 has a somewhat forward-looking tilt: it deals with application requirements and lodges in the Secretary the discretion to determine whether grantees will be able to carry forth under the program in the coming year. Although Section 104(d) contemplates audits and allows the Secretary to make adjustments resulting from those audits, the Section is *not* designed to be a dispute resolution mechanism.

## II.

By contrast, Section 111 most closely captures what the Secretary is attempting to accomplish in this case. Section 111 contemplates that there will be instances in which a grantee and the Secretary disagree about whether the grantee has substantially complied with community development requirements.[5] This Section establishes a mechanism for resolving these types of disputes—to wit, by submitting them to a hearing officer who can make findings and a determination in accordance with an administrative record which can then be judicially reviewed, if necessary.

This reading of the statute gives meaning to both Section 104 and Section 111. By contrast, to read the statute as the defendants would have me do, would be to make Section 111 a nullity. Indeed, the Secretary does not seem adverse to making Section 111 a nullity—in the 13 years this

statute has been in existence, the Secretary has *never* initiated Section 111 procedures against any grant recipient. *See* Deposition of Vincent Landau, HUD Asst. General Counsel, at 90–91. When desiring to compel compliance with its interpretation of the statute, the Department has *always* proceeded through the Section 104(d) adjustment mechanism. Interpreting the statute as the Department has—that is, giving the Secretary the unilateral ability to reach a Section 111 result through Section 104—means there is simply no incentive for the Secretary to utilize the Section 111 procedure.

While that may make pragmatic sense for the Secretary, I do not believe the law is written that way and I am not prepared to interpret the statute in a manner which renders one portion of it a nullity. *See Mountain States Tel. & Tel. v. Pueblo of Santa Anna*, 472 U.S. 237, 105 S.Ct. 2587, 2595, 86 L.Ed.2d 168 (1985). Rather, as the plaintiff has noted, "if two sections potentially conflict, the Court must reconcile the discordant provisions, if at all possible." Pl. Br. at 29, *citing Don't Tear It Down v. Pennsylvania Ave. Dev. Corp.*, 642 F.2d 527, 533 (D.C.Cir.1980). In this instance, the two sections can best be reconciled by placing them in their proper contexts and reading them accordingly. Section 104(d), falling as it does within the grant application section of the statute (Section 104) must be read to give the Secretary the authority to make adjustments on grant applications pursuant to audits made of those applications. By contrast, Section 111 applies not to the application process, but to the resolution of disputes concerning alleged past noncompliance.

---

5. The defendants' argue that because Section 111 addresses instances of "substantial noncompliance," the Act contemplates that the Secretary must first determine that substantial noncompliance exists before gearing up the Section 111 procedure. Fed. Def. Reply to Pl. Opposition to Def. Motion for Summary Judgment at 9. In other words, the defendants argue that Section 111 can only be "triggered" with a Secretarial finding of substantial noncompliance. *Id.* This reading is not supported by the plain words of the statute. Section 111 specifically says, "If the

Secretary finds *after* reasonable notice and opportunity for hearing that a recipient ... has failed to comply substantially ..." 42 U.S.C. § 5311 (emphasis supplied). Thus, the statute envisions notice and a hearing *as part of the process* by which the Secretary will be able to determine whether substantial noncompliance has taken place. "Substantial noncompliance" is not, therefore, the trigger for Section 111 proceedings, but rather the target of these proceedings.

## III.

What is at issue in the two disputes underlying this case is whether Kansas City's actions in assessing abutting homeowners after 1978 and in not submitting GDR forms from nonprofit subrecipients constituted noncompliance with the statute. *See* fn. 1, *supra*. These disputes have no connection to the application process and thus are not within the reach of Section 104. These disputes concern whether Kansas City's actions amounted to noncompliance and thus are the types of concerns Section 111 was designed to address. Since the City and HUD disagree about what constitutes compliance on these issues, the fairest method of resolving the issue is by submitting it to an administrative adjudication as contemplated by Section 111.

Plaintiff's motion for summary judgment shall be granted. An appropriate Order accompanies this Memorandum.

## ORDER

For the reasons stated in the Memorandum dated August 5, 1987, it is this 5 day of August, 1987, hereby

ORDERED that plaintiff's motion for summary judgment be granted; and thus it is further

DECLARED that defendants are not authorized to terminate or reduce the amount of the annual Community Development Block Grant ("CDBG") required to be allocated to the plaintiff for fiscal year 1987 pursuant to the provisions of Sections 106(b) of Title I of the Housing and Community Development Act of 1974 ("the Act"), or limit to particular CDBG programs, projects or activities the use to which such grant may be put by plaintiff, unless and until defendants first comply with the requirements and procedures set forth in Section 111 of the Act and 24 C.F.R. § 570.913(c).