**CITY OF KANSAS CITY, MISSOURI**

v.

**U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, et al., Appellants. (Two Cases)**

Nos. 87–5354, 87–5408.

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 19, 1988.

Decided Nov. 18, 1988.

Robert K. Rasmussen, Atty., Dept. of Justice, with whom John R. Bolton, Asst. Atty. Gen., Jay B. Stephens, U.S. Atty., Michael Jay Singer, Atty., Dept. of Justice, Gershon M. Ratner and John W. Herold, Associate General Counsels, and Carl A. Tibbetts, Atty., U.S. Dept. of Housing and Urban Development, Washington, D.C., were on the brief, for appellants.

Otto J. Hetzel, with whom Carl A.S. Coan, III, Washington, D.C., was on the brief, for appellee.

Before EDWARDS, BUCKLEY and SENTELLE, Circuit Judges.

Opinion for the Court filed by Circuit Judge HARRY T. EDWARDS.

HARRY T. EDWARDS, Circuit Judge:

Under the Community Development Block Grant ("CDBG") program, the Secretary of the Department of Housing and Urban Development ("the Secretary" or "HUD") makes grants to units of state and local government. The appellee, the City of Kansas City ("the City"), is a recipient of annual CDBG grants. After a dispute arose over the City's use of CDBG funds from 1978 to 1985, the Secretary, proceeding under section 104(d) of the Housing and Community Development Act of 1974 ("CDBG Act" or "the Act"), 42 U.S.C. § 5304(d) (1982 & Supp. IV 1986), conditioned part of the City's 1987 grant on certain actions to be taken by the City. The City filed suit, arguing both that it was entitled to the funds unconditionally and that HUD had violated the CDBG Act by proceeding under section 104(d) of the Act, rather than under section 111, 42 U.S.C. § 5311 (1982), which requires notice and an opportunity for a hearing. The district court granted summary judgment in favor of the City on the procedural claim, and the Secretary appealed. Because we find that the Secretary has adopted an interpretation of the CDBG Act that violates Congress' clear intent to provide cities with procedural protections, we affirm.

## I. BACKGROUND

### A. *Statutory Background*

The CDBG Act distinguishes between two types of grantees: those entitled to receive grants every year ("entitlement cities") and grantees that receive funding only on a discretionary, case-by-case basis ("nonentitlement areas"). Kansas City is an entitlement city.

Once a grant to an entitlement city is approved, it is normally provided in the form of a letter of credit, which is increased annually by the amount of the grant. The grantee draws on the letter of credit as it makes obligations throughout the year, and funds not used in one year may be carried over to the next.

The Act contains two monitoring provisions. Section 104(d) requires the Secretary, on at least an annual basis, to make reviews and audits of a grantee's activities, and allows him to "make appropriate adjustments in the amount of the annual grants" in accordance with his findings. 42 U.S.C. § 5304(d) (Supp. IV 1986). The second monitoring provision is found in section 111 of the Act, 42 U.S.C. § 5311 (1982). Under that provision,

> If the Secretary finds *after reasonable notice and opportunity for hearing* that a recipient of assistance under this chapter has failed to comply substantially with any provision of this chapter, the Secretary, until he is satisfied that there is no longer any such failure to comply, shall—
>
> (1) terminate payments to the recipient under this chapter, or
>
> (2) reduce payments to the recipient under this chapter by an amount equal to the amount of such payments which were not expended in accordance with this chapter, or
>
> (3) limit the availability of payments under this chapter to programs, projects, or activities not affected by such failure to comply.

*Id.* § 5311(a) (emphasis added).[1] Thus, under section 111, a grantee must be given notice and opportunity for a hearing when charged with a failure to comply substantially with any provision of the CDBG program. The Secretary has promulgated regulations detailing the procedures to be followed when section 111 is to be invoked. *See* 24 C.F.R. § 570.913 (1988). Actions taken under section 111 are directly reviewable in the courts of appeals. 42 U.S.C. § 5311(c).

---

1. In lieu of the direct sanctions available under section 111(a), the Secretary may also refer the matter to the Attorney General under section 111(b). 42 U.S.C. § 5311(b) (1982).

## B.  *The Proceedings Below*

In 1975, Kansas City used CDBG monies to establish a fund (Fund 225) to improve streets, gutters and sidewalks in certain areas of the City. The City assessed property owners for the cost of sidewalks constructed in front of their homes, and these assessments went back into the Fund to be used for further improvements.

In 1978, HUD adopted a regulation that prohibited this type of assessment. 24 C.F.R. § 570.200(c) (1988). The City asked that it be allowed to continue Fund 225, and in May 1978 HUD informed the City by letter that "no additional block grant funds may be provided for the project through an amendment or approval of a new program year component. However, funds approved for the project prior to March 1, 1978, may continue to be used by the recipient." Joint Appendix 121 ("J.A."). The City subsequently transferred into the Fund unspent CDBG monies from the 1975, 1976 and 1977 grants.

In 1983, HUD's Regional Inspector General audited Kansas City's use of CDBG monies and concluded that the City's transfer of the earlier grants into Fund 225 had violated the 1978 regulation. HUD therefore ordered the City to reimburse property owners who were assessed for improvements financed by those grants. On March 5, 1986, on reconsideration at the City's request, HUD partially reversed itself and found that the transfers of pre–1978 CDBG grants were not subject to the 1978 regulation. However, HUD determined that assessments made after 1978 for the costs of improvements financed by the transfers constituted CDBG "program income" and were subject to the regulation. Therefore, HUD ordered the City to refund any further assessments made for improvements financed by that income. HUD did not object to any of the City's ongoing activities, nor has it done so since.

On December 23, 1986, fearing that HUD planned to withhold the City's 1987 CDBG entitlement, Kansas City filed an action in federal district court. The City sought declaratory and injunctive relief to compel HUD to distribute the City's full 1987 entitlement prior to the beginning of the City's fiscal year on March 1, 1987, and to require HUD to follow the procedures of section 111 before attempting to terminate or reduce the City's annual grant.

On April 27, 1987, when, contrary to its normal procedure, HUD still had not acted on the City's 1987 grant, the City moved for partial summary judgment. Four days later, on May 1, 1987, HUD proposed a Grant Agreement and Funding Approval, which it required the City to sign before it would release any of the $6.5 million in CDBG funds for 1987. The agreement contained two "special conditions" on $3.7 million of the grant. The Secretary conditioned $500,000 on the City's repayment of the allegedly improper assessments. HUD withheld the remaining $3.2 million until the City submitted revised "Grantee Performance Reports" (GPRs) listing certain loan repayments as CDBG program income.[2] In late May 1987, after an agreement was worked out allowing the City to sign the Grant Agreement and to submit revised GPRs without waiving its right to contest the special conditions and the proper characterization of the loan repayments, respectively, HUD released all of the City's 1987 grant except the $500,000.

On August 6, 1987, the district court granted partial summary judgment for the City and declared the special conditions invalid. 669 F.Supp. 525 (D.D.C.1987). The court found that the statutory framework made clear that section 111, and not section 104(d), applied to the dispute in this case. HUD's reading of the statute, the court found, would make section 111 a "nullity." *Id.* at 528. In fact, the court pointed out, "the Secretary does not seem adverse to making Section 111 a nullity—in the 13 years this statute has been in existence, the Secretary has *never* initiated Section 111

---

2. The dispute, which was unrelated to the assessments, involved repayments of loans of CDBG monies into revolving loan funds established and operated by independent nonprofit organizations. The City contends that these repayments should not be attributed to the City as program income.

procedures against any grant recipient." *Id.* (emphasis in original).

After the court issued its opinion, HUD continued to refuse to release the $500,000 until the court ordered it to do so on October 2, 1987. HUD has appealed both the August 6 and October 2 orders.

## II. ANALYSIS

### A. *The Applicable Standard of Review*

■ The narrow question before this court is whether HUD must provide notice and an opportunity for a hearing when it proposes to condition, reduce or terminate an entitlement city's annual CDBG grant because of alleged past noncompliance that does not affect current or future performance. Since this case presents "a pure question of statutory construction, our first job is to try to determine congressional intent, using 'traditional tools of statutory construction.' If we can do so, then that interpretation must be given effect...." *NLRB v. United Food & Commercial Workers Union,* — U.S. —, 108 S.Ct. 413, 421, 98 L.Ed.2d 429 (1987) (quoting *INS v. Cardoza–Fonseca,* 480 U.S. 421, 446, 107 S.Ct. 1207, 1221, 94 L.Ed.2d 434 (1987)). If, on the other hand, "the statute is silent or ambiguous with respect to the specific issue," *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984), then the question for the court becomes whether the agency's construction of the statute is "permissible," *id.,* that is, one that is "rational and consistent with the statute." *United Food,* 108 S.Ct. at 421; *accord International Union, United Mine Workers v. Federal Mine Safety & Health Review Comm'n,* 840 F.2d 77, 81 (D.C.Cir.1988). In the present case, the agency's construction of the statute cannot survive scrutiny under *Chevron/United Food.* Our review of the CDBG Act convinces us that congressional intent is absolutely clear and totally at odds with the agency's position in this case: Section 111, and not section 104(d), governs the Secretary's actions in this case and requires the Secretary to provide the City with reasonable notice and an opportunity for a hearing.

### B. *The Clear Terms of Section 111*

Section 111 of the CDBG Act specifically addresses the present situation. The very title of the section, "Remedies for Noncompliance," indicates that the section covers the Secretary's "special conditions" on the City's 1987 grant: the Secretary imposed those conditions as a remedy for the City's refusal to comply with HUD's order to refund the disputed assessments. More importantly, the language of section 111 provides for precisely this type of remedy.

The sanctions specified in section 111 are available—indeed, mandated—when the Secretary determines that a recipient "has failed to comply substantially with any provision of this chapter." 42 U.S.C. § 5311(a).[3] Under the clear terms of the statute, that determination is made after the notice and opportunity for hearing contemplated in section 111. Thus, a recipient like Kansas City is entitled to a formal opportunity to contest the Secretary's allegations before being subject to sanctions.

If the Secretary determines that a grantee has substantially failed to comply with the rules governing the CDBG program, section 111 requires the Secretary to take one of three actions. One of the available

**3.** HUD has never claimed that section 111 should not apply because Kansas City's alleged acts of noncompliance were somehow "insubstantial." Indeed, the fact that HUD selected a relatively drastic sanction (and one that is expressly authorized for violations under section 111) belies any such contention.

HUD has characterized the "special conditions" on Kansas City's funding as somehow "less drastic" than the reduction in funding provided for under section 111. This is a perplexing assertion, however, given that the conditions threatened to reduce the City's 1987 grant by at least $3.7 million, or over fifty-five percent. Indeed, HUD's own Regional Administrator objected to HUD's actions because they were of questioned legality and "may cause undo [sic] financial hardship on the City." Memorandum from Gerald F. Simpson, Regional Administrator–Regional Housing Commissioner to Jack R. Stokvis, General Deputy Assistant Secretary for Community Planning and Development (Aug. 6, 1984), J.A. 151.

sanctions is a reduction in "payments to the recipient under this chapter by an amount equal to the amount of such payments which were not expended in accordance with this chapter." *Id.* § 5311(a)(2). The sanction sought by the Secretary was such a reduction,[4] and the fact that the reduction was conditional does not remove it from the strictures of section 111. In fact, section 111 specifically provides for conditional sanctions, by authorizing the Secretary to reduce or terminate funding "until he is satisfied that there is no longer any such failure to comply" with the Act. *Id.* § 5311(a). Moreover, the net effect of the "special conditions" that HUD imposed on Kansas City's 1987 grant was to reduce immediately the amount of funds available to the City. If the district court had not intervened, those reductions would have been permanent unless the City, without any opportunity for a hearing, had acquiesced in HUD's interpretations of the disputed issues.

The clear language of section 111 thus controls this case. Kansas City is alleged to have substantially failed to comply with the CDBG Act, and the Secretary has attempted to impose a section 111 sanction. The problem is that the Secretary acted without first affording Kansas City notice and opportunity for a hearing as required under section 111 and its accompanying regulations. *See id.;* 24 C.F.R. § 570.913(b), (c) (1988). The Secretary therefore violated the CDBG Act by failing to follow procedures mandated by the statute before reducing Kansas City's 1987 grant.

---

**4.** The City has pointed out that the amount of the conditional reductions of the City's 1987 grant bears no clear relationship to the amount of alleged mispayments. Neither party has claimed, however, that this incongruence takes the reductions out of the scope of section 111.

**5.** We do not address the question whether the Secretary may use the adjustment authority of section 104(d) to remedy past *in* substantial noncompliance with the Act. Section 111 on its face covers only acts of substantial noncompliance, whereas section 104(d) appears to reach only current or future performance. We leave to another day the question of how the Secretary may respond to an act of truly insubstantial past noncompliance.

## C. *The Inapplicability of Section 104(d)*

The Secretary contends that notice and an opportunity for a hearing were not required because the Act gives the Secretary the choice of whether to proceed under section 111 or section 104(d). He claims that the action against Kansas City was permissible because section 104(d) authorizes the Secretary to review a grantee's past performance and to make "appropriate adjustments in the amount of the annual grants." 42 U.S.C. § 5304(d). We reject this argument because it is flatly at odds with the terms of the statute.

Nothing in section 104(d) suggests that it covers sanctions sought for past substantial noncompliance or that it carves out an exception to section 111.[5] The Secretary has not charged that the City's current use of CDBG funds is improper, but rather seeks to impose sanctions to remedy the City's alleged past noncompliance.[6] Section 104(d) is therefore inapplicable, and the Secretary may not avoid the procedural requirements of section 111 by invoking the adjustment authority of section 104(d).

Our conclusion that section 104(d) does not authorize the Secretary's actions against Kansas City also follows from a review of the 1977 amendments to the CDBG Act. In 1977, Congress amended the "appropriate adjustment" provision of section 104(d) to add the following language:

> With respect to assistance made available to [nonentitlement areas], the Secretary may adjust, reduce, or withdraw

---

**6.** Both the language and the context of section 104(d) suggest that the review and adjustment authority under this provision is designed to ensure that current grants will be spent in compliance with the Act. As the House Report accompanying the CDBG Act explained, "the post-audit and review requirements [of section 104(d)] will serve as the basic assurance that block grant funds *are being used* properly to achieve the bill's objectives." H.R.Rep. No. 1114, 93d Cong., 2d Sess. 10 (1974), U.S.Code Cong. & Admin.News 1974, p. 4273 (emphasis added).

such assistance, or take other action as appropriate in accordance with the Secretary's reviews and audits under this subsection, except that funds already expended on eligible activities under this chapter shall not be recaptured or deducted from future assistance to such [nonentitlement areas].

Pub.L. No. 95–128, § 104(e)(2), 91 Stat. 1111, 1115 (1977), *codified at* 42 U.S.C. § 5304(d) (Supp. IV 1986).

This provision does not affect entitlement cities such as Kansas City. However, Congress would not have amended the Act to specify that HUD may "adjust, reduce, or withdraw" a nonentitlement area's assistance in connection with the review and audit procedures if section 104(d) already gave HUD that authority. HUD argues, to the contrary, that the fact that Congress specifically prevented HUD from using section 104(d) to recapture expended funds from a nonentitlement area's future assistance indicates that HUD has that power with respect to entitlement cities. Yet, it would be anomalous for Congress to give recipients of discretionary grants greater protection than cities that are legally entitled to receive annual funding. Rather, we believe that Congress specifically prevented HUD from recapturing expended funds from a nonentitlement area's future grant in order to ensure that HUD did not read the language in the first half of the 1977 amendment to give it that power. The fact that Congress took pains to limit the Secretary's power in this respect further indicates that the Secretary's actions against Kansas City were not authorized by section 104(d).

We need not delineate here the precise scope of the authority available under section 104(d), because there is no conflict between section 104(d) and section 111 on the facts of this case. When, as here, a recipient's current use of grant funds is not in question, nothing in section 104(d) gives the Secretary the authority to condition or reduce current funding as a sanction for past noncompliance with the CDBG Act. Section 111 specifically provides the sanctions for past noncompliance, and the Secretary must comply with the requirements of that section when he wishes to invoke those sanctions.

The Secretary cannot ignore the notice and hearing provisions of section 111 simply because he prefers the more informal procedures of section 104(d). HUD's own report admits that HUD has used section 104 in order to "avoid[ ] the more detailed and rigorous procedural standards of Section 111." HUD, Office of Community Planning & Dev., Consolidated Annual Report to Congress on Community Development Programs 33 (1983). This application of the statute plainly violates congressional intent. As we have previously noted, "[w]hen a statute dictates that parties receive notice and a hearing ... the provision of those basic procedural rights is not left to be decided by administrative 'flexibility' or 'discretion.' " *RKO General, Inc. v. FCC,* 670 F.2d 215, 233 (D.C.Cir.1981), *cert. denied,* 456 U.S. 927, 102 S.Ct. 1974, 72 L.Ed.2d 442 (1982). In the district court's words, section 111 would be a "nullity" if the Secretary could avoid it whenever he chose, as he has for fourteen years, by using section 104(d) instead. *See* 669 F.Supp. at 528.

### D.  *The Importance of Section 111 Procedural Protections*

One of the principal purposes of the CDBG Act was to develop "a consistent system of Federal aid which ... provides assistance on an annual basis, with maximum certainty and minimum delay, upon which communities can rely in their planning." 42 U.S.C. § 5301(d)(1) (1982). Statutory procedural protections play a critical role in this scheme, because they ensure that a city legally entitled to an annual CDBG grant will not be "precipitously deprived of funding" pursuant to arbitrary action by HUD. *East Ark. Legal Servs. v. Legal Servs. Corp.,* 742 F.2d 1472, 1480 (D.C.Cir.1984), *cert. denied,* 470 U.S. 1028, 105 S.Ct. 1395, 84 L.Ed.2d 784 (1985). In the present case, for example, HUD subjected Kansas City to a potential loss of $3.2 million simply for refusing to record certain income in a particular column and thus to acquiesce in HUD's interpretation

of that income. The remaining $500,000 was related to assessments that the City believes both were properly made and involved an amount closer to $197,000. The City thus risked losing over half of its annual grant without being given its rightful opportunity to dispute HUD's contentions in a hearing.

We are particularly mindful of the importance of giving effect to section 111 in light of the due process rights involved.[7] As this court has noted, "[i]n most cases, Congress has been silent on the question of a grantee's procedural rights when an agency decides to terminate some or all of its federal grant." *East Ark. Legal Servs.*, 742 F.2d at 1479. When, as in this case, Congress has not been silent, a court has a special obligation to ensure that the agency does not "end-run the clear procedural protections which Congress provided." *Id.* at 1480; *accord Conecuh–Monroe Community Action Agency v. Bowen*, 852 F.2d 581, 589 (D.C.Cir.1988) (refusing to adopt an agency's statutory interpretation that would destroy the protection Congress provided to grant recipients).

### III. Conclusion

Congress specifically required the Secretary to provide CDBG entitlement cities with reasonable notice and an opportunity for a hearing before conditioning, reducing or terminating their current grants as a sanction for past noncompliance. The Secretary did not follow those procedures when it conditioned Kansas City's 1987 grant. The judgment of the district court is therefore affirmed.

AFFIRMED.

---

**7.** Possible constitutional claims have been re-served and were not before the court.