**CITY OF BOSTON, Petitioner,**

v.

**UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, Respondent.**

**No. 88–2037.**

United States Court of Appeals, First Circuit.

Heard Dec. 4, 1989.

Decided March 26, 1990.

---

Richard M. Bluestein, Janet Steckel Lundberg and Krokidas & Bluestein, Boston, Mass., on brief for Jamaica Plain Housing Trust, Inc., amicus curiae.

Patricia Sharin Flagg, Office of Gen. Counsel, with whom Gershon M. Ratner, Associate Gen. Counsel for Litigation, Angelo Aiosa, Asst. Gen. Counsel for Litigation, Anthony Steinmeyer and Dwight G. Rabuse, Dept. of Justice, Washington, D.C., were on brief for respondent.

Before CAMPBELL, Chief Judge, COFFIN, Senior Circuit Judge, and BOWNES, Circuit Judge.

LEVIN H. CAMPBELL, Chief Judge.

The City of Boston ("Boston") petitions this court for review of the United States Department of Housing and Urban Development's ("HUD") termination of an agreement to help subsidize a housing development project. At issue is whether this court has jurisdiction over Boston's petition, whether Boston was entitled to an administrative hearing before HUD terminated the agreement, and what relief, if any, this court may provide. Finding that we have jurisdiction and that HUD wrongfully failed to provide an opportunity for a hearing prior to terminating the grant, we vacate HUD's decision to terminate, remand to HUD, and order HUD to provide an administrative hearing.

## Background

This dispute arises out of an agreement between HUD and Boston under which HUD was to provide Boston with an Urban Development Action Grant ("UDAG" or "UDAG grant") to help finance the renovation of a building for rental housing. The UDAG program is part of the Housing and Community Development Act, 42 U.S.C. § 5318 (the "Act"). The purpose of the Act is to stimulate economic growth in urban areas experiencing economic distress by providing partial financing for development projects. 42 U.S.C. § 5318(a). UDAG grants are not intended to finance development projects completely, but to serve as seed money that will bring about financing from other sources. The Act

Albert W. Wallis, Boston, Mass., with whom Patrick J. Costello, Deborah J. Goddard, Public Facilities Dept., Richard M. Bluestein, Janet Steckel Lundberg, and Krokidas and Bluestein, Boston, Mass., were on brief for petitioner.

permits HUD to approve a UDAG grant only if it finds that "there is a strong probability" that private non-federal financing of the proposed project would not be made absent the grant. 42 U.S.C. § 5318(j). HUD must ensure that "the amount of the grant provided is the least necessary to make the project feasible." 42 U.S.C. § 5318(k).

The relevant agreement between HUD and Boston was executed in October, 1985. Boston was to receive a UDAG grant of $530,000 to help finance a cooperative venture between a non-profit community group, the Jamaica Plain Housing Trust, and a private developer, the Jamaica Plain Associates, to renovate the former Jamaica Plain High School in the Jamaica Plain section of Boston for use as mixed-income rental housing. The total cost of completing the project was expected to be $6,139,-600. This cost was to be funded by the UDAG grant; a $3,989,582 loan from the Massachusetts Housing Finance Authority; a $270,000 loan from the City of Boston funded through federal Community Development Block Grant funds,[1] which the city had already been granted; and proceeds of at least $1,350,000 from private equity financing. These private proceeds were to be generated through a complicated investment scheme involving tax incentives and tax syndication.

The agreement, as well as HUD regulations, subjected the release of grant funds to certain conditions. Boston was to submit to HUD documents evidencing "legally binding commitments" of third parties participating in the project. 24 C.F.R. § 570.461(b). Boston was also required to incur the costs reimbursable by the UDAG funds *before* the grant funds were actually released. 24 C.F.R. § 570.462. The agreement provides that HUD may "terminate" the contract if Boston fails to submit mate-rials satisfying the substantive terms of the agreement.

Sometime during 1987, HUD concluded that the amount of non-UDAG funding for the project was greater than that stated in Boston's original grant application, on which the agency's approval of the grant had been based. On August 19, 1988, before release of any funds under the UDAG agreement, but after the housing project had actually been completed, HUD informed Boston by letter that it was terminating the grant agreement, because it had determined that Boston had failed to provide documentation sufficient to demonstrate that the UDAG funds were needed to make the project feasible as required by 42 U.S.C. § 5318(k). The letter was the only notice that Boston received of HUD's decision, and HUD did not offer Boston an opportunity for a hearing on whether or not Boston had met the statutory terms. Boston petitions this court for review of HUD's termination of its UDAG grant.

## Discussion

### I. Jurisdiction and Boston's Right to A Hearing

An initial question is whether this court has jurisdiction to determine Boston's petition for review. The jurisdictional question is, however, intertwined with the question of whether HUD was required to offer Boston a pretermination hearing. We address both issues together.

Boston argues that under 42 U.S.C. § 5311(a), HUD was required to provide Boston with an opportunity for a hearing prior to terminating the UDAG agreement. Section 5311(a) provides that where a grant recipient fails to comply substantially with any statutory provision governing the grant, HUD shall "terminate, . . . reduce, . . . or limit" payments to the recipient, but only "after reasonable notice and opportunity for hearing." [2] Boston contends that

---

1. *See* 42 U.S.C. § 5303.

2. Section 5311(a) provides, in full:
    If the Secretary finds after reasonable notice and opportunity for hearing that a recipient of assistance under this chapter has failed to comply substantially with any provision of this chapter, the Secretary, until he is satisfied

that there is no longer any such failure to comply, shall—(1) terminate payments to the recipient under this chapter, or (2) reduce payments to the recipient under this chapter by an amount equal to the amount of such payments which were not expended in accordance with this chapter, or (3) limit the

this court has jurisdiction under section 5311(c) to order HUD to offer a hearing to Boston on the issue of compliance or, alternatively, to review HUD's termination decision on the merits. Section 5311(c) states that "[a]ny recipient which receives notice under [section 5311(a)] of the termination, reduction, or limitation, of payments under this chapter" may petition the court of appeals for review of HUD's action.[3]

Thus, whether Boston was entitled to a hearing under section 5311(a) and whether we have jurisdiction over Boston's petition under section 5311(c), both turn on whether Boston was a UDAG recipient and whether HUD's termination of the UDAG agreement was a "termination, reduction, or limitation of payments."

HUD concedes that Boston is a UDAG "recipient," at least "for purposes of HUD's regulations and the contract with HUD."[4] However, HUD argues that since Boston had not yet received any funds under the UDAG agreement, there was no "termination" of "payments." Accordingly, HUD argues, Boston is not a recipient which has been notified of the termination

of payments, so as to trigger the notice and hearing requirements of section 5311(a) or to allow Boston to file a petition for judicial review with this court under section 5311(c)(1).

Who is right—Boston or HUD—involves construing a statute that HUD is charged with administering. In such circumstances, we are first to "try to determine congressional intent, using 'traditional tools of statutory construction.' If we can do so, then that interpretation must be given effect...." *NLRB v. United Food & Commercial Workers Union*, 484 U.S. 112, 123, 108 S.Ct. 413, 420, 98 L.Ed.2d 429 (1987). If Congressional intent cannot be ascertained under traditional methods of construction, then the interpretation provided by the agency responsible for administering the statute—in this case, HUD—is entitled to deference "as long as its interpretation is rational and consistent with the statute." *Id.* See also *Chevron U.S.A., Inc. v. National Resources Defense Council, Inc.*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984).[5]

---

availability of payments under this chapter to the programs, projects, or activities not affected by such failure to comply.

42 U.S.C. § 5311(a).

3. Section 5311(c) provides:

(1) Any recipient which receives notice under subsection (a) of this section of the termination, reduction, or limitation of payments under this chapter may, within sixty days after receiving such notice, file with the United States Court of Appeals for the circuit in which such State is located, or in the United States Court of Appeals for the District of Columbia, a petition for review of the Secretary's action....

(2) The Secretary shall file in the court record of the proceeding on which he based his action, as provided in section 2112 of Title 28. No objection to the action of the Secretary shall be considered by the court unless such objection has been urged before the Secretary.

(3) The court shall have jurisdiction to affirm or modify the action of the Secretary or to set it aside in whole or in part. The findings of fact by the Secretary, if supported by substantial evidence on the record considered as a whole, shall be conclusive. The court may order additional evidence to be taken by the Secretary, and to be made part of the record. The Secretary may modify his findings of fact, or make new findings, by reason of the new evidence so taken and filed with the

court ... which findings with respect to questions of fact shall be conclusive if supported by substantial evidence....

(4) Upon the filing of the record with the court, the jurisdiction of the court shall be exclusive....

42 U.S.C. § 5311(c).

Section 5311 was enacted in 1974, as part of the statute providing for community development block grants. Three years later, section 5318 was enacted to provide for urban development action grants, such as the one at issue here. However, by its terms, section 5311 applies to all recipients "under this chapter," which includes UDAG recipients under section 5318.

4. HUD's regulations consistently refer to applicants that have received preliminary approval as "recipients." See 24 C.F.R. §§ 570.460(c)–570.464. Similarly, the UDAG agreement throughout refers to Boston as the "recipient." For example, the agreement states at the outset that, "The Secretary, in reliance upon the representations set forth in the Application, has approved the award of grant funds to the Recipient, to be expended by the Recipient in conformity with the requirements and provisions of this Grant Agreement."

5. An agency's interpretation regarding questions of judicial review is not normally entitled to

Applying these principles here, we conclude that the congressional intent can be determined under traditional canons of analysis. We construe section 5311(a) as affording to Boston an opportunity for a hearing prior to HUD's termination of the promised UDAG grant. We, therefore, do not defer to HUD's inconsistent interpretation, either in respect to the notice and hearing requirement or in respect to Boston's right to judicial review.

HUD contends that section 5311's direction to "terminate payments," after a recipient fails to comply with any statutory provision, limits that section's application to situations where payments have actually been commenced. Where, as here, the grant was cut off in advance of payment, HUD takes the view that section 5311 is inapplicable, hence its requirement of notice and an opportunity for hearing likewise does not apply. Under this analysis, Boston's remedy for an improper termination of its grant is to bring a contract action against HUD or to seek review of HUD's action in the district court under the Administrative Procedure Act.

HUD's position is not persuasive. HUD cancelled Boston's grant after Boston had completed the project, ostensibly in reliance on the promised grant. The government concedes that notice and an opportunity for a hearing under section 5311 would be required had HUD repudiated the grant agreement after advancing, for example, only $100 of the promised $530,000. From a common sense standpoint, notice and hearing procedures are no less indicated where HUD repudiates a promised grant on the eve of payment.

To be sure section 5311(a)'s phraseology that the Secretary, upon a grantee's failure to comply, "shall terminate payments to the recipient", suggests that the thing to be "terminated" (here, payments) has already begun. But other language in section 5311(a) suggests that Congress was not deliberately focusing on whether payment had yet commenced. The same section also commands the Secretary, in the event of noncompliance, to "limit the availability of payments ... to the programs, projects or activities not affected by such failure to comply." The word "limit" contains no suggestion that payments had to have started. This provision, as HUD argues, may have been inserted to deal with severable instances of noncompliance under block grants. Still, use of the word "limit" strongly suggests that Congress's message was simply to withhold relevant funding whenever a recipient has failed to comply with the controlling law. Whether the promised payments have or have not begun is immaterial. The same noncompliance that dictates withholding unpaid funds *after* payment starts will dictate refusing to commence payments where notice of noncompliance is received in advance. In either instance, a cutoff causes harm to the recipient (in fact, more harm if the cutoff precedes *any* payments), making it only fair to provide the recipient with notice and opportunity for a hearing. Both the structure and purpose of the statute indicate, therefore, that the words terminate, reduce or limit should be given a broad, common-sense reading, not a constricted one.

That HUD's different reading is hypertechnical in this context is further shown by the obvious purpose of the notice and hearing provision. It was plainly intended to give a recipient a fair chance to respond to the serious charge of noncompliance,

deference. *See, e.g., Love v. Thomas,* 838 F.2d 1059, 1064 n. 9 (9th Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 1932, 104 L.Ed.2d 403 (1989). However, the prerequisite for judicial review under section 5311(c)—i.e., the occurrence of termination, reduction, or limitation of a recipient's payments—is the same event which requires HUD to provide an opportunity for a hearing under section 5311(a). Since HUD must interpret the relevant language in the first instance in order to implement section 5311(a), the standard of review set forth in *Chevron* and

*United Food* is applicable. *See United Food,* 484 U.S. at 133–34, 108 S.Ct. at 426–27 (concurring opinion by Justice Scalia, joined by Chief Justice Rehnquist, Justices White and O'Connor) (noting that the Court's decision in that case demonstrates the "continuing vitality of the [*Chevron* ] test for judicial review" in that the Court applied that test to "the question of whether dismissal of complaints requires [National Labor Relations] Board approval and thus qualifies for judicial review").

and so have the grant maintained if the Secretary's action was ill-conceived. The cutting off of a contractually promised grant has serious impact. A grantee in this type of situation may already have made a heavy investment in reliance on HUD's promise. By providing that HUD must give notice and an opportunity for a hearing before sanctioning development grant recipients for noncompliance with statutory provisions, and by providing for judicial review, Congress gave to recipients the opportunity to try to convince the agency, and later a court, that they had complied. Section 5311's procedural protections were to ensure that a city entitled to a development grant would not be "precipitously deprived of funding pursuant to arbitrary action by HUD." *Kansas City v. United States Department of Housing and Urban Development*, 861 F.2d 739, 744 (D.C.Cir.1988). As one court has observed, "the statute envisions notice and a hearing as part of the process by which the Secretary will be able to determine whether substantial noncompliance has taken place." *Kansas City v. United States Department of Housing and Urban Development*, 669 F.Supp. 525, 528 n. 5 (D.D.C. 1987), *affirmed*, 861 F.2d 739 (D.C.Cir. 1988).

HUD does not explain why Congress would have wanted the availability of notice and hearing to turn on whether or not actual payments had begun. Those protections will, in fact, be of little use to most recipients unless they apply to terminations occurring *prior* to final approval and commencement of payments. HUD requires UDAG recipients to incur grant-reimbursed costs before it makes actual payments under the agreement. *See* 24 C.F.R. § 570.462. This being so, HUD will frequently be able to ascertain whether a UDAG recipient is in compliance *before* making any payments to it. Thus, a dispute over whether a recipient is in compliance with the UDAG requirements is likely to arise before, rather than after, HUD commences payments.[6] No special reason appears in the statutory history why Congress would have wanted to withhold due process protections during this earlier phase, when terminations seem most likely to occur. HUD's interpretation would completely and, we think, unreasonably, deprive UDAG recipients of the protections Congress intended. We hold that HUD's termination of Boston's UDAG grant was a "termination, reduction, or limitation of payments," requiring an opportunity for a hearing under section 5311(a).

HUD argues that even if Boston is a recipient that has received notice of termination, reduction, or limitation of payments within the meaning of section 5311(a), this court lacks jurisdiction over Boston's petition. HUD contends that section 5311(c) authorizes review in the courts of appeal only in those situations where it has acknowledged the applicability of section 5311(a) and acted accordingly. HUD concedes that the mere absence of a formal hearing would not be jurisdictionally fatal. However, where, as here, the agency has not offered an *opportunity* for a hearing, or acknowledged in any way that it is terminating pursuant to section 5311(a), HUD contends that section 5311(c) review is inapplicable. Boston's remedy, if any, according to HUD, would be an action brought under the Administrative Procedure Act in the district court to compel HUD to provide an opportunity for a hearing.

HUD's argument that our jurisdiction is precluded by its failure to acknowledge that it is terminating under section 5311(a) is based on an interpretation of the appellate review provisions in section 5311(c). That provision is not one which HUD is responsible for administering and we, therefore, owe no particular deference to its interpretation. *See supra* note 5. *See also New York Shipping Association v.*

---

**6.** Indeed in 1987, a court observed that "in the 13 years this statute has been in existence, [HUD's] Secretary has *never* initiated section [53]11 procedures against any grant recipient." *Kansas City v. United States Department of Housing and Urban Development*, 669 F.Supp.

525, 528 (D.D.C.1987) (emphasis in original), *aff'd and quoted with approval*, 861 F.2d 739, 741–42 (D.C.Cir.1988). Meanwhile, according to HUD, "*numerous* UDAG terminations prior to final approval ... have occurred each year." (emphasis in original).

*Federal Maritime Commission*, 854 F.2d 1338, 1363 (D.C.Cir.1988) (courts will not defer to agency's interpretation where agency is "interpreting not the meaning of a statute that Congress has charged it to administer, but rather a statute merely delimiting its jurisdiction"), *cert. denied*, —— U.S. ——, 109 S.Ct. 866, 102 L.Ed.2d 990 (1989). Accordingly, having determined that Boston was entitled to an opportunity for a hearing under section 5311(a), we must determine on our own whether Boston is entitled to review in this court under section 5311(c). We find that the language of section 5311(c) is contrary to HUD's interpretation.

Section 5311(c)(1) authorizes "[a]ny recipient which receives notice under [section 5311(a)] of the termination, reduction, or limitation of payments" to petition the court of appeals for review of "the Secretary's action." The statute does not provide simply for review of the results of a hearing but for review of the Secretary's termination "action." We have already concluded that, under the circumstances of this case, Boston is "a recipient" and HUD's termination of the UDAG agreement was a termination, reduction or limitation of payment within section 5311(a). HUD's letter of August 19, 1988, notifying Boston that it was terminating the UDAG agreement thus constituted judicially reviewable notice of the termination limitation or reduction of payment. Although HUD did not provide Boston with an opportunity for a hearing, as it was required to do under section 5311(a), its error could not defeat the jurisdiction of this court to review its purportedly final action.

Not only is HUD's challenge to our jurisdiction unfounded in the language of section 5311(c), its acceptance would produce anomalous results. Under HUD's interpretation, recipients whose funding was terminated after they were offered a proper hearing would be entitled to invoke this court's jurisdiction. However, recipients wrongfully denied an agency hearing would not be so entitled.

HUD's interpretation is inconsistent with *Florida Power and Light Co. v. Lorion*, 470 U.S. 729, 105 S.Ct. 1598, 84 L.Ed.2d 643 (1985), a case in which the Supreme Court rejected a similar interpretation of the statutes providing for direct review in the circuit courts of orders of the Nuclear Regulatory Commission. In *Lorion*, the Court of Appeals had held that it lacked jurisdiction over a petition seeking review of an agency order, because the order was issued without an administrative proceeding. In reversing this ruling, the Supreme Court stated:

> The Court of Appeals did not specify whether it thought [42 U.S.C.] § 2239 vested the courts of appeals with initial jurisdiction over only proceedings in which a hearing actually occurred or over proceedings in which a hearing could have occurred had one been requested. Either approach results in consequences that cannot be squared with general principles respecting judicial review of agency action.

470 U.S. at 741, 105 S.Ct. at 1605. The Court went on to explain that the interpretation adopted by the Court of Appeals would lead "to a duplication of judicial review in the district court and the court of appeals" and "would cause bifurcation of review of orders issued in the same proceeding."

HUD's interpretation of section 5311(c) is likewise inharmonious with "general principles respecting judicial review of agency action" and would produce "irrational consequences" similar to those the Court found in *Lorion*. A recipient, such as Boston, denied the opportunity for a hearing would be required to petition the district court for an order that HUD hold a hearing. If HUD then ruled against the recipient, the recipient could shift courts by bringing the issue directly before the court of appeals. We decline to hold that Congress intended to provide such a cumbersome scheme of judicial review under section 5311(c). *Cf. Lorion*, 470 U.S. at 743, 105 S.Ct. at 1606 ("In the absence of specific evidence of contrary congressional intent ... we have held that review of orders resolving issues preliminary or ancillary to the core issue in a proceeding should be

reviewed in the same forum as the final order resolving the core issue.").[7]

HUD argues that section 5311(c)'s references to a "record of the proceeding on which [the Secretary] based his action" and "findings of fact by the Secretary," and its incorporation of the substantial evidence standard of review, indicate that Congress intended that appellate review would be available only where there is a record developed in a formal agency proceeding. We agree that section 5311(c) contemplates judicial review based on a record compiled by the agency in a proceeding pursuant to section 5311(a).[8] However, it is equally clear from the language of section 5311(c) that the agency's failure to follow the procedures required by section 5311(a) or to develop a complete factual record does not deprive the court of jurisdiction. Instead, section 5311(c)(3) specifically grants the court jurisdiction to "order additional evidence to be taken by the Secretary, and to be made part of the record." *See also Lorion*, 470 U.S. at 744, 105 S.Ct. at 1607 ("[I]f the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation."). Thus, there is no merit to HUD's argument that its own failure to follow statutory procedures insulates its action from judicial review in this court.

## II. *The Appropriate Remedy*

■ Having determined that we have jurisdiction over Boston's petition, we turn to the issue of the appropriate remedy. Although HUD's termination of the grant agreement was not predicated on a formal hearing, over the course of its dealings with Boston, HUD has compiled a voluminous record, which it has filed with this court. This informal record could conceivably provide a basis for judicial review of the merits of HUD's termination of the UDAG agreement. However, both parties have suggested that the more appropriate course would be to remand the case to HUD for further review. We agree. This case involves complex and technical factual issues that have not yet been adjudicated before HUD in a formal hearing as contemplated by section 5311(a). Moreover, HUD's brief letter notifying Boston of its decision to terminate the agreement provides little basis for discerning the reasoning underlying the decision to terminate.

In view of these circumstances, we decline to reach the merits of HUD's decision to terminate the UDAG agreement. Since HUD failed to provide an opportunity for a hearing prior to terminating the UDAG payments as is required by section 5311(a), its decision must be vacated and the case remanded to HUD with an order to provide Boston with such an opportunity.

HUD argues that even if this court has jurisdiction and even if HUD was required to offer a hearing under section 5311(a), the court lacks authority to direct HUD to provide Boston with a hearing. The argument is without merit. In addition to authorizing the court "to affirm or modify the action of the Secretary or to set it aside in whole or in part," section 5311(c)(3) specifically empowers the court to "order additional evidence to be taken by the Secretary, and to be made part of the record." When read in conjunction with section 5311(a), section 5311(c)(3) plainly contemplates that "additional evidence" to be taken by the Secretary will generally be taken in the course of a formal agency proceed-

7. We need not decide whether the district courts have concurrent jurisdiction under the Administrative Procedure Act over actions to compel HUD to provide a hearing unlawfully withheld under section 5311(a).

8. We note that the interpretation offered by HUD would not ensure that an administrative record compiled at a formal agency *hearing* would be available for review in all cases in which jurisdiction lies in the court of appeals

under section 5311(c). HUD's position is that judicial review is available in the court of appeals as long as HUD has provided an *opportunity* for a hearing, whether or not a hearing actually takes place. Consequently, it is not at all clear that HUD's contention that Congress "intended direct review in the Courts of Appeal be predicated on the record of a formal agency action" advances HUD's interpretation of section 5311(c).

ing. Accordingly, the authority to order additional evidence to be made part of the record necessarily includes the authority to order HUD to hold a formal agency proceeding.[9]

VACATED and REMANDED. Costs to Petitioner.

---

**9.** Since we remand to HUD with an order to hold a formal hearing, we need not address at this time Boston's motion to expand the administrative record.